UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MATTHEW KAMPF, | Case No. 21-CV-580 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| PRINCIPAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Matthew Kampf participated in employer-sponsored insurance plans with Defendant Principal Life Insurance Company for both long term disability ("LTD") benefits and life coverage during disability ("LCDD"). Principal issued and administered the insurance policies, which are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

A fall in 2011 left Kampf disabled. Kampf filed his disability claims with Principal more than six years later—well outside the prescribed notice period. Principal approved LTD benefits, determining that the benefit start date under the policy's language was six months before Kampf's notice. Kampf believes the benefits should have been retroactive to 2011, soon after the date of his fall. This disagreement makes the first issue for the Court: the appropriate start date for LTD benefits. As to LCDD, Principal denied the coverage because the receipt of LCDD requires a "Total Disability," and Kampf did not

1

meet the definition of Total Disability under the policy's language. Kampf disagrees, maintaining he was "Totally Disabled" under the policy. Thus, the second issue before the Court is whether Principal was reasonable in rejecting Kampf's LCDD claim.

When an ERISA plan gives the plan administrator "discretion to interpret the plan and to determine eligibility for benefits"—which is the case here—the Court must uphold the plan administrator's decision if it is based on a reasonable interpretation of the policy and supported by substantial evidence. *Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F.3d 1036, 1039 (8th Cir. 2017) (citation omitted). Under the LTD policy language, Principal is correct in its interpretation of the start-date language; its interpretation of the policy is reasonable and supported by substantial evidence. Similarly, under the LCDD policy language, Principal correctly determined that Kampf did not meet the requirement for "Total Disability"; Principal's interpretation of the policy is reasonable and supported by substantial evidence. For the reasons below, the Court grants Principal's motion for summary judgment, denies Kampf's motion for summary judgment, and dismisses the case.

## BACKGROUND

### I. Long Term Disability Benefits

Kampf was the sole proprietor of Go Consumers, Inc. which had established an employee welfare benefit plan that funded LTD benefits. (ECF No. 56-1 ("Admin. Rec.") at 55, 391.) Under the LTD policy, Principal had discretion to construe and interpret the

2

policy's provisions, determine eligibility for benefits, and determine the type and extent of benefits to be provided. (*Id.* at 414.)

To qualify for LTD benefits, Kampf was required to give Principal notice of the claim and provide certain documentation, as follows:

> Written notice must be sent to The Principal by or for a Member who wishes to file claim for benefits under this Group Policy. This notice must be sent within 30 days after the date of loss for which claim is being made. If it is not possible to give proof within 90 days after the Elimination Period, it must be given no later than one year after the time proof is required ***except in the absence of legal capacity.***

(*Id.* at 445 (Part IV, Section Q, Article 1) (emphasis added); *see also id.* at 445–46.)

If Kampf qualified for benefits after giving notice, Principal needed to determine the scope of benefits, including the start date. The LTD policy addresses the start date under Part IV, Section A, Article 1. (*Id.* at 428.) Under this section, the start of the "benefit payment period" occurs on the latest of: (1) "the date the Member completes an Elimination Period"; (2) "the date six months before The Principal receives Written proof of the Member's Disability"; or (3) "the day after the Member's Short Term Disability Benefit Payment period ends." (*Id.*)

## II.   Life Coverage During Disability

Go Consumers also contracted with Principal to fund group life insurance coverage. (*Id.* at 292.) This policy gave Principal similar "discretion to construe or interpret the provisions of this Group Policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided." (*Id.* at 306.)

3

At issue is the life insurance policy's LCDD provision that would allow Kampf to maintain his life and accidental death and dismemberment insurance coverage while "Totally Disabled." (*Id.* at 331.) To qualify for this coverage, Kampf must have become "Totally Disabled" while covered by the life insurance policy. (*Id.*) The policy defines "Total Disability" as "[a] Member's inability due to sickness or injury, to perform the majority of the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training or experience." (*Id.* at 302.). Coverage becomes effective "on the earlier of: (1) the date nine months after the date the Member becomes Totally Disabled; or (2) the date the Member dies." (*Id.* at 332.)

### III.     The 2011 Fall and Insurance Claims

Kampf fell down a ravine in September 2011. (*Id.* at 8.) He suffered facial and bodily fractures, multiple cuts and abrasions, frost bite, an intracerebral hemorrhage, and a traumatic brain injury, which left him disabled. (*Id.* at 8, 10, 55, 92.) Kampf continued to receive medical care—including surgeries and cognitive care—for the next several years. (*See e.g.*, *id.* at 62, 92, 117–18.) Although the LTD policy was in place at the time of his 2011 fall, Kampf did not file a claim until March 2018, which he maintains is due to his cognitive disabilities caused by the fall. (*Id.* at 55–56.)

4

Principal completed an administrative review and ultimately approved Kampf's LTD benefits.[1] (*Id.* at 21.) In determining the retroactive start date, Principal used September 2017—six months before Principal received "[w]ritten proof of [d]isability."[2] (*Id.*) The benefits continue until Kampf can work again. (*Id.*) Kampf claims the retroactive benefits should have begun the day after his STD benefit period ended (in December 2011) because of his cognitive impairment and because the policy is unclear on whether Section Q's incapacity exception applies to Section A's benefit payment period provision.

Kampf also filed a claim for LCDD, which Principal denied because Kampf did not meet the definition of Total Disability in the policy. (*Id.* at 69–70.) In its denial, Principal noted that Kampf "returned to work multiple times before [he] completed the continuous 9 month elimination period."[3] (*Id.* at 69.) Kampf informed Principal that even though he did not work for certain months between October 2011 and November 2016, he never went nine months without working. (*Id.* at 69–70.) When Kampf stopped

---

[1] Principal also approved Kampf's short-term disability ("STD") claim. (Admin. Rec. at 68.) The STD benefits are not in dispute.

[2] As discussed, Section A provides three potential benefit start dates. (Admin. Rec. at 428.) The benefits begin on the later of the three dates, which in this case was six months before Kampf's notice of disability.

[3] "Elimination period" is not defined in the life insurance policy but appears to be a phrase Principal uses to refer to its requirement that a member be "Totally Disabled" for nine months. (Admin. Rec. at 69–70.)

working completely in 2016, he had lapsed in his payments, and so he was also ineligible for LCDD for that reason. (*Id.* at 70.)

## ANALYSIS

The parties agree that the policies at issue are governed by ERISA, that they give Principal discretion to determine eligibility for benefits and to interpret the policy, and that the Court's review is thus for abuse of discretion. *See Donaldson*, 863 F.3d at 1039. "Under the abuse of discretion standard, 'the proper inquiry is whether the plan administrator's decision was reasonable.'" *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 883 (8th Cir. 2002) (citation omitted). The Eighth Circuit views reasonableness through two lenses: substantial evidence and *Finley*. The first, applicable in some cases but not all, is whether the benefits decision is "supported by substantial evidence." *Id.* at 883–84. Under this standard, "substantial" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 884. The Court must only consider evidence before Principal when it denied Kampf's claim. *Id.*

The second lens, again applicable in some cases but not all, addresses Principal's interpretation of its policy. Under this lens, the Court determines whether Principal's interpretation is reasonable, assessing factors under *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). These are: (1) "whether [Principal's] interpretation is consistent with the goals of the Plan," (2) "whether [its] interpretation

6

renders any language of the Plan meaningless or internally inconsistent," (3) "whether [its] interpretation conflicts with the substantive or procedural requirements of the ERISA statute," (4) "whether [it has] interpreted the words at issue consistently," and (5) "whether [its] interpretation is contrary to the clear language of the Plan." *Donaldson*, 863 F.3d at 1039 (citing *Finley*, 957 F.2d at 621). These factors "inform [the Court's] analysis" but "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." *Id.* (alterations in original) (quotation marks and citations omitted).

I.  **Long Term Disability Benefits**

As the parties outlined at the hearing, Kampf's challenge to Principal's decision on LTD benefits concerns interpretation of the policy, not a substantial evidence review. In his challenge and at the hearing, Kampf agrees that the second *Finley* factor—whether Principal's interpretation of the policy "renders any language of the Plan meaningless or internally inconsistent"—is the factor that addresses his concern.[4] *Id.*

---

[4] Kampf concedes that the remaining *Finely* factors have been met because Principal's interpretation is consistent with the policy's goals, Principal's interpretation does not conflict "with the substantive or procedural requirements" of ERISA, Principal interpreted the "words at issue consistently," and Principal's interpretation is not "contrary to the clear language" of the policy. *Finley*, 957 F.2d at 621 (citation omitted).

As to this factor, Kampf's entire argument appears to be that the "legal incapacity" exception in the policy's written notice provision (Section Q) extends to the "Benefit Payment Period" (Section A). The policy's unambiguous language compels otherwise. Section Q allows policy holders to submit a claim notice late due to legal incapacity. Section A governs when disability benefits begin. These are two separate provisions, and Kampf cannot graft the language of Section Q onto Section A. Even if the policy's language was ambiguous (which it is not) "[a]ny reasonable decision [by Principal] will stand, even if the court would interpret the language differently as an original matter."[5] *Manning*, 604 F.3d at 1038.

Principal's interpretation of the policy is reasonable. Principal's motion for summary judgment on this ground is granted, and Kampf's motion is denied.[6]

## II.     LCDD Benefits

Unlike the LTD benefits issue, Kampf's challenge to the LCDD decision rests not on the *Finley* factors but on the substantial evidence standard. In other words, Kamp does

---

[5] In determining whether Principal abused its discretion in limiting Kampf's retroactive benefits, the Court considers Principal's dual role in evaluating and paying benefit claims under the policy. *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038–39 (8th Cir. 2010) (explaining that if a conflict of interest such as this exists, courts "should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits").

[6] Although Kampf moves the Court for summary judgment, his brief and argument at the hearing make clear that he believes there are issues of material fact for the Court to resolve.

not challenge Principal's interpretation of the LCDD policy. Instead, he challenges Principal's decision that Kampf was not "Totally Disabled" under the policy language.

Given the evidence that Kampf returned to work, Principal reasonably determined Kampf was not "Totally Disabled" for the required nine months.[7] (Admin. Rec. at 303.) Kampf argues that Principal's decision was unreasonable because Kampf did not return to "full duty work." (ECF No. 21 at 11.) Kampf informed Principal that he "returned to work in his prior capacity . . . [h]owever, he was working limited hours and in a reduced capacity. . . ." (Admin. Rec. at 76.) Kampf further argues that he "didn't go back to 40-50 hours a week like he did before" but "was working 15-20 hours a week." (*Id.* at 30.) He also explained to Principal that he could not perform his job duties as he was able to before the accident. (*See e.g., id.* at 39.) But to be considered "Totally Disabled" under the life insurance policy, Kampf must be unable to "perform the majority of the material duties" of his job or any other job for which he "may reasonably become qualified." (*Id.* at 302.) Nothing in the record suggests that Kampf met the definition of "Total Disability." (*Id.*)

---

[7] Principal also argues Kampf did not exhaust his administrative remedies before suing. ERISA requires policy holders to exhaust administrative benefits before bringing claims in federal court when an ERISA benefits plan requires exhaustion in its terms. *Burds v. Union Pac. Corp.*, 223 F.3d 814, 817 (8th Cir. 2000). Even if Kampf had exhausted his administrative benefits, he would not be entitled to LCDD as explained above.

Principal reasonably determined that Kampf was not "Totally Disabled" continuously for nine months. Principal's motion for summary judgment on this ground is granted, and Kampf's motion is denied.

### III. Motion to Seal

Kampf requests an order to seal Exhibit A to his lawyer's first declaration. Because the exhibit "is over 7300 pages and rife with numerous dates of birth, Social Security numbers, financial account numbers, and names of minor children amongst other confidential information," (ECF No. 24 (filed under seal)), the Court grants the motion and excuses Kampf from redacting this exhibit. Fed. R. Civ. P. 5.2(d). The exhibit (ECF Nos. 25–45) will stay sealed until a court orders otherwise.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Kampf's motion for summary judgment (ECF No. 19) is DENIED;

2. Principal Life Insurance Company's motion for summary judgment (ECF No. 13) is GRANTED; and

3. Kampf's motion to seal (ECF No. 24) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 23, 2022                                  BY THE COURT:

                                                                       s/Nancy E. Brasel
                                                                       Nancy E. Brasel
                                                                       United States District Judge